UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VIVIAN YATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-01605-AGF |
| | ) |
| CONSUMER ADJUSTMENT | ) |
| COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff in this putative class action claims that Defendant Consumer Adjustment Company, Inc. ("CACi") made automated, prerecorded debt collection calls to consumers without consent, in violation of the Telephone Consumer Protection Act (TCPA). Plaintiff seeks to represent a class consisting of:

> All persons or entities within the United States who (1) within four (4) years of the commencement of this action, (2) received a nonemergency telephone call from CACi regarding a debt allegedly owed to CACi, (3) to a cellular telephone line, (4) through the use of an ATDS or an artificial or prerecorded voice (5) where CACi did not have express consent to call said cellular telephone number.

ECF No. 1 at ¶ 54.

The matter is now before the Court on Plaintiff's motion (ECF No. 20) to compel Defendant to produce certain call data relating to Plaintiff's putative class action claims. Specifically, Plaintiff asserts that CACi's call logs for at least four of its six calls to Plaintiff reflect the notation "CACi_MessageOnly" in the "service" field and include a "blast" directive in the "campaign" field, such as "thblast", "teamblast", "thmedblast",

"thblaste." Plaintiff further asserts that the account notes for these calls show Plaintiff's telephone number described in three different ways; "third party", "WRONG NUMBER" and "WN," with the "CACi Result Code Report" confirming that the "WN" description means "WRONG/NO GOOD NUMBER." *See generally* ECF No. 20 at 2. Plaintiff further asserts that on October 2, 2020, after Plaintiff called CACi and CACi confirmed that they were calling a "wrong number" and would remove her number, CACi's call logs for Plaintiff's cell phone number changed in status from "Unknown" to "Bad" under the comment field. *Id.* Plaintiff now seeks to compel similar data for the putative class members.

> Originally, Plaintiff's request for production asked for:
>
> REQUEST FOR PRODUCTION 15: The complete database tables showing (1) All persons in the United States (2) to whose cellular telephone number (3) CACi, (or a third party on CACi's behalf) placed a non-emergency telephone call (4) using the same dialing system(s) used to call Plaintiffs or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where CACi did not have express consent to call said cellular telephone number. If this request is impossible to satisfy, produce electronic information in CSV format sufficient to show as much of the following as possible: (a) all calls made by or on CACi's behalf, at any time during the "relevant time period", using the system used to call 813-777-6648, (b) the telephone number to which each such call was made, (c) the phone type (e.g. cell, work, or home), (d) the script for any artificial or prerecorded message used in the call, (e) the name of the person called, (f) disposition codes for each call, (g) the date and time of each call, (h) the name and address of each person called, (i) whether the person called had previously asked that they not be called, and (j) whether the person called was not the person alleged to owe the debt in question.

ECF No. 20 at 3.

CACi objected to this request on the bases that it was premature, as no class has been certified; that it improperly requested the personal identifying information

2

of putative class members; and that it sought confidential and proprietary information.

During the parties' meet-and-confer, Plaintiff offered to narrow the request to records that contain notations of "unknown, status changed from unknown to bad, WN, +++++ and any other code, documentation or notation that evidences calls made with an ATDS or pre-recorded voice, artificial voice without consent." *See* ECF No. 25 at 11. However, CACi argues that, even as narrowed, the request is not proportional to the needs of the case because the documents would be irrelevant to Plaintiff's legal claims.

For example, CACi argues that it applies a "conservative policy" to its use of the "WN" or "wrong number" code, such that "'WN' means only that an unidentified party on the other end of the line stated to a collection that the number called was not associated with the consumer/debtor[,] . . . even if the collector believes the individual to be lying to avoid collection contact, a common problem." ECF No. 25 at 13. Thus, CACi argues that the "WN" notation does "not reliably demonstrate that the numbers actually were wrong numbers." *Id.*

Upon careful consideration of the parties' arguments, in light of the proportionality concerns set forth in Rule 26 of the Federal Rules of Civil Procedure, the Court will grant Plaintiff's motion in part. The primary case relied upon by CACi for the proposition that classwide discovery is premature, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978), is inapposite. In that case, unlike here, the plaintiff sought class members' personal identifying information such as names and addresses in order

3

"to enable them to send the class notice, and not for any other purpose." 37 U.S. at 353. The Supreme Court held that such a request is not within the scope of Rule 26. But the Court expressly noted that it did "not hold that class members' names and addresses never can be obtained under the discovery rules" and that "[t]here may be instances where this information could be relevant to issues that arise under Rule 23, . . . or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues." *Id.* at 354 n.20.

Plaintiff's request here, as modified, has been issued for the express purpose of illuminating Rule 23 issues, such as numerosity, typicality, and commonality. Whether Plaintiff will successfully establish that these Rule 23 factors have been satisfied is a question for another day, after Plaintiff's motion to certify the class has been filed. But at this stage, Plaintiff has shown the relevance of the records. *See, e.g.*, *Leeb v. Charter Commc'ns, Inc.*, No. 4:17CV2780 RLW, 2019 WL 144132, at *3 (E.D. Mo. Jan. 9, 2019) (holding that a narrowed pre-certification discovery request for account and call records for "accounts where there were automated calls to phone numbers logged as 'wrong number' before the call was made" was relevant and discoverable in connection with a plaintiff's putative TCPA class action regarding prerecorded messages to cellular phones without prior express consent),

And CACi has not shown it would be unduly burdensome to produce the requested information, as narrowed. The Court also agrees with Plaintiff that any confidentiality concerns are likely adequately addressed by the existing Stipulated

4

Protective Order (ECF No. 19).  However, the Court will also order the parties to meet and confer to determine whether additional protective measures are required.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 20.  The motion is **GRANTED** as to the narrowed discovery request described in Defendant's response brief (ECF No. 25).  The parties shall meet and confer in good faith regarding the prompt production of this information, subject to the existing Stipulated Protective Order and any additional protective measures as appropriate.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this __ day of August, 2021.